UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| The Bank of New York Mellon fka the Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2006-OC3, Mortgage Pass-through Certificates Series 2006-OC3,<br><br>Plaintiff<br><br>v.<br><br>Antigua Maintenance Corporation aka Antigua Condominiums; East Cactus 2112 Trust; and Nevada Association Services, Inc.,<br><br>Defendants | Case No.: 2:16-cv-00796-JAD-EJY<br><br>**Order Granting Summary Judgment in Favor of the Bank**<br><br>[ECF Nos. 76, 77, 78] |

The Bank of New York Mellon, as trustee of a mortgage trust, brings this quiet-title action to challenge the effect of the 2013 non-judicial foreclosure sale of a condominium unit on which it claims a deed of trust.[1] The bank sues the Antigua Maintenance Corporation, who authorized the sale to foreclose on its lien and purchased the unit at foreclosure; Antigua's foreclosure agent Nevada Association Services; and subsequent transferee East Cactus 2112 Trust, seeking a declaration that Antigua and East Cactus purchased the property subject to the bank's security interest. The bank, Antigua, and East Cactus have filed competing motions for summary judgment. I find that the bank is entitled to summary judgment in its favor on its quiet-title claim because its obligation to tender the superpriority portion of the lien is excused. So I grant summary judgment on this claim in favor of the bank, dismiss the bank's remaining claims and theories as moot, deny Antigua's and East Cactus's motions as moot, and close this case.

---

[1] ECF No. 1 (complaint).

# Background

### A.   The foreclosure sale

Susan Nye purchased the condominium home at 1050 East Cactus Avenue # 2112 in Las Vegas, Nevada, in 2006 with a $138,000 loan from Silver State Mortgage, secured by a deed of trust that designated Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary.[2] MERS assigned that deed of trust to the Bank of New York Mellon fka the Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2006-OC3, Mortgage Pass-through Certificates Series 2006-OC3 on March 2, 2012.[3]

The Nevada Legislature gave homeowners' associations a superpriorty lien against residential property for certain delinquent assessments and established a non-judicial foreclosure procedure to enforce such a lien in Chapter 116 of the Nevada Revised Statutes.[4]  After the assessments on this condominium unit became delinquent, Antigua, through its agent Nevada Association Services, Inc. (NAS), commenced non-judicial foreclosure proceedings on it under Chapter 116 in 2012.[5]

When the bank learned of the impending foreclosure sale, its attorneys, Miles, Bauer, Bergstrom & Winters, LLP, sent a letter to Antigua through NAS.  That letter stated Miles Bauer's position that the nine months of assessments predating the notice of delinquent assessment comprised the superpriority portion of the association's lien, but that it was "unclear" based on the information available to Miles Bauer how much those nine months of assessments

---

[2] ECF No. 76-1 (deed of trust).

[3] ECF No. 76-2 (assignment).

[4] Nev. Rev. Stat. § 116.3116; *SFR Investments Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 409 (Nev. 2014).

[5] ECF Nos. 76-3 (notice of lien for delinquent assessments); 76-4 (notice of default and election to sell); 76-5 (notice of foreclosure sale).

were for this property.[6] Whatever it was, Miles Bauer "offer[ed] to pay that sum upon presentation of adequate proof of the same by the HOA."[7] NAS didn't respond to that letter, Miles Bauer never made a tender, and the unit was sold at foreclosure on March 1, 2013, to Antigua, which credit-bid $5,507.17.[8] Three weeks later, Antigua transferred the property to East Cactus.[9]

**B.   The bank's claims**

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[10] The bank brings this action to save its deed of trust from extinguishment. It asserts claims for quiet title, breach of NRS 116.1113, wrongful foreclosure, and injunctive relief.[11]

The statutory breach and wrongful foreclosure claims are pled as contingent ones that are entirely dependent on the court determining that Antigua's sale extinguished the deed of trust.[12] Injunctive relief is not an independent cause of action—it's a remedy for a true claim. Here, it is pled as a pre-trial remedy in conjunction with the bank's quiet-title claim,[13] so I do not construe it as a separate claim. The quiet-title claim is the type recognized by the Nevada Supreme Court

---

[6] ECF No. 76-6 at 6.
[7] *Id.*
[8] ECF Nos. 76-11 (foreclosure deed); 76-14 (corrective deed).
[9] ECF No. 76-13 (grant, bargain, sale deed).
[10] *SFR I*, 334 P.3d at 419.
[11] ECF No. 1 (complaint).
[12] *See id.*, ¶¶ 55, 65.
[13] *See id.*, ¶¶ 69–73.

in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—an action "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[14] The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[15] No other party has pled affirmative claims in this case.

## C. The competing summary-judgment motions

Discovery has closed[16] and the bank, Antigua, and East Cactus have each moved for summary judgment on some or all of the bank's claims.[17] The bank offers three reasons why I must hold that Antigua's foreclosure sale did not extinguish its deed of trust: (1) its tender of the superpriority amount was excused because NAS had a well-known policy at the time to reject Miles Bauer's payments for only the superpriority lien amount; (2) unfairness plus a grossly inadequate sales price compel the court to set aside the sale under the Nevada Supreme Court's holding in *Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*[18]; and (3) the statute under which this HOA foreclosure sale occurred was unconstitutional.[19] For its part, Antigua argues that the bank's claims are time-barred by the three-year statute of limitations in NRS 11.090(3), that it is an improper defendant for the quiet-title claim because it does not claim

---

[14] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[15] *Id*. at 1112.

[16] *See* ECF No. 47 (noting that discovery closed 11/15/2019).

[17] ECF Nos. 76, 77, 78.  NAS has not participated in this action since mid-2016.

[18] *Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641 (Nev. 2017).

[19] ECF No. 76.

an adverse interest in the property, and that the bank's claims are without merit.[20]  East Cactus, too, challenges both the timeliness and the merits of the bank's action.[21]  Because I grant summary judgment in the bank's favor on an excused-tender theory, which moots its remaining claims, I do not reach the merits of the majority of the other arguments, claims, and theories.

## Discussion

### A. Standards for cross-motions for summary judgment

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[22]  The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[23]  If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue of material fact for trial.[24]

Who bears the burden of proof on the factual issue in question is critical.  When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[25]  Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must

---

[20] ECF Nos. 76 (Antigua's opp. to bank's MSJ); 77 (Antigua's MSJ).

[21] ECF Nos. 78 (East Cactus's MSJ); 80 (East Cactus's opp. to bank's MSJ).

[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[23] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[24] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[25] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

present significant probative evidence tending to support its claim or defense."[26]  When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[27]  The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[28]  With these principles in mind, I consider the parties' motions.

### B. The bank is entitled to summary judgment on its quiet-title claim based on futility of tender.

The bank relies on an excused-tender theory as its first summary-judgment argument.  The tender theory recognizes that, in order for an HOA's non-judicial foreclosure sale to wipe out the first deed of trust, it must be foreclosing on the superpriority portion of the lien.  But if the superpriority portion of the lien has been satisfied before the sale, that tender "cure[s] the default," so "the HOA's foreclosure on the entire lien result[s] in a void sale as to the superpriority portion."[29]  The net result of such a tender is that the "first deed of trust remain[s] after foreclosure" and the foreclosure-sale buyer purchases the property subject to the deed of trust.[30]

---

[26] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (citation omitted).

[27] *See, e.g.*, *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[28] *Celotex*, 477 U.S. at 322.

[29] *Bank of Amer. v. SFR Invs. Pool 1, LLC* ("*Diamond Spur*"), 427 P.3d 113, 121 (Nev. 2018).

[30] *Id.*

The bank didn't tender the superpriority portion of Antigua's lien on this property before the foreclosure sale. Though it offered to make such a payment, it did not tender one.[31] The bank contends that its obligation to tender that payment should be excused because Antigua's foreclosure agent NAS had made it known that it would reject such a tender.[32]

The en banc Nevada Supreme Court adopted this excused-tender theory in *7510 Perla Del Mar Ave. Trust v. Bank of America*,[33] holding that, although a mere "promise to make a payment at a later date or once a certain condition has been satisfied cannot constitute a valid tender," the obligation to tender the superpriority amount is excused if tender would have been futile because it would have been rejected.[34] In *Perla Del Mar*, Bank of America's attorneys, Miles Bauer, sent a letter to the HOA's foreclosure agent, Nevada Association Services (NAS), "offering to pay the yet-to-be-determined superpriority portion of the HOA's lien . . . ."[35] Though NAS received the letter, it did not respond to it and went forward with the sale. The evidence at the quiet-title trial "established that at the time relevant to this action, it was NAS's business policy to have its receptionist reject any check for less than the full lien amount" and that "Miles Bauer and the Bank had knowledge of this business practice."[36] "As a result," the Nevada Supreme Court concluded, "the Bank was excused from making a formal tender in this instance because, pursuant to NAS's known policy, even if the Bank had tendered a check for the

---

[31] ECF No. 76-6 at 6.
[32] ECF No. 76 at 5–6.
[33] *7510 Perla Del Mar Ave. Trust v. Bank of Amer.*, 458 P.3d 348 (Nev. Feb. 27, 2020) (en banc).
[34] *Id*. at 350, 352.
[35] *Id*. at 350.
[36] *Id*. at 351.

superpriority portion of the lien, NAS would have rejected it."[37] The Court therefore "conclude[d] that the district court properly determined that the Bank preserved its interest in the property such that Perla Trust purchased the property subject to the Bank's first deed of trust."[38]

The instant facts are materially indistinguishable from those in *Perla Del Mar*. Here, Miles Bauer sent NAS a nearly identical letter, stating that "my client hereby offers to pay [nine months' of common assessments pre-dating the notice of default] upon presentation of adequate proof of the same. . . ."[39] NAS did not respond and went forward with the sale. And as NAS's corporate counsel has testified, NAS ceased responding to Miles Bauer's letters in 2012.[40] It was NAS's position at the time that "disclosing a subset of the delinquency that was in the recorded documents would violate the [Fair Debt Collection Practices Act]," so NAS would not have told the bank how much of the total account balance represented the superpriority portion of the lien.[41] Not that it mattered because—as NAS's "founder/CEO/owner" David Stone has testified—when NAS received a check for the superpriority component only, NAS "would reject that check" without providing an explanation "because it was directed and it was not something that we could do; it was an inaccurate amount, and the terms of negotiating the check were problematic."[42] NAS's corporate counsel has confirmed in his testimony that NAS would reject checks that claimed to be payment in full:

---

[37] *Id*. at 351.

[38] *Id*.

[39] ECF No. 76-6 at 4.

[40] ECF No. 76-7 at 20 (testimony of Chris Yergensen); *accord* ECF No. 76-10 at 28 (testimony of NAS founder/CEO/owner David Stone).

[41] *Id*. at 23–24.

[42] ECF No. 76-10 at 27–28 (Stone testimony, further explaining that "every check that I received from a lender for the superpriority portion of it . . . had conditions on it").

> NAS's policy in receiving checks [was] that it would accept a check if it had no conditions on it and apply it to the outstanding balance. If it was a payment in full, it would pay off the account in full, and NAS would close the collection file. If it was a partial payment and it was made with no conditions, NAS would accept the check, apply it to the outstanding delinquent balance, and continue to collect on the outstanding balance.
>
> **If it was a partial payment that had conditions on it such as "this is payment in full" or "if you accept this, it's payment in full," and it was not, that condition was not necessarily true or agreed upon, then the check would be returned.**[43]

Miles Bauer was taking the position that the payment of nine months of assessments would "fully discharge" the bank's "obligations to the HOA per NRS 116.3102,"[44] a condition that the Nevada Supreme Court has found the banks legally justified to insist upon.[45] And NAS's corporate counsel has acknowledged in testimony that Miles Bauer was aware of NAS's policies and practices at this time as he "orally spoke to Miles Bauer thousands of times in [his] career."[46]

      The bank has thus established that had Miles Bauer tendered a check for nine months of assessments, with its standard conditions, NAS would have rejected it. This evidence of futility is not contradicted in this record. I thus grant summary judgment in favor of the bank on its quiet-title claim because its obligation to tender the superpriority portion of the lien is excused, just as in *Perla Del Mar*. The bank is therefore entitled to a declaration that the deed of trust was not extinguished by the foreclosure sale. And because the resolution of the quiet-title claim in

---

[43] ECF No. 76-8 at 24 (emphasis added).

[44] ECF No. 76-6 at 6 (Miles Bauer letter).

[45] *See Perla Del Mar*, 458 P.3d at 351, n.4. No party contends—let alone has offered evidence—that there were charges for maintenance or nuisance abatement that would have added to the superpriority portion of this lien.

[46] ECF No. 76-8 at 55, 80–81.

the bank's favor moots its other quiet-title theories and the bank's contingent claims against Antigua and NAS, I dismiss them, leaving no claims remaining in this action.

**C.     The bank's quiet title claim is timely.**

Highlighting that this action was filed three years and a month after the foreclosure sale, Antigua and East Cactus argue that the bank's quiet-title claim is time-barred by the three-year statute of limitation in NRS 11.190(3)(a).[47] That statute governs actions "upon a liability created by statute, other than a penalty or forfeiture."[48] As the Nevada Supreme Court found in a recent unpublished decision and would likely so hold in a published opinion if given the opportunity, a quiet-title claim is "authorized under NRS 40.010" and "does not seek to hold anyone liable, but instead simply seeks a determination regarding the parties' respective rights with regard to the subject property."[49]

East Cactus contends that this quiet-title claim is different because it could be related to a random handful of other statutes not referenced anywhere in the complaint itself, including NRS 107.080(6), 104.3311, and 104.3603.[50] But like NRS 40.010, none of those statutes create liability either, and a party cannot impose liability upon another through those statutes. Even if I interpret the bank's quiet-title action as a claim founded upon NRS 116.3116, which creates HOA liens, East Cactus's argument still fails because the bank does not seek to impose liability by its claim here—it seeks to settle adverse interests.[51] So NRS 11.190(3)(a)'s three-year bar

---

[47] See ECF Nos. 85 at 11; 87 at 10–12.

[48] Nev. Rev. Stat. § 11.190(3)(a).

[49] *U.S. Bank Tr., N.A. as Tr. for LSF8 Master Participation Tr. v. SFR Investments Pool 1, LLC*, 461 P.3d 159 (Table) (Nev. 2020).

[50] See ECF No. 78 at 10–15.

[51] See ECF No. 1 at 6–10.

does not apply.  As the bank points out, I have repeatedly held that quiet-title claims like this one are governed by Nevada's catch-all four-year deadline in NRS 11.220, and I do so again here for the same reasons.[52]  Because the bank's action was filed within that four-year window, its quiet-title claim is timely.

**D.     Bona fide purchaser status has no effect on the survival of the deed of trust.**

Finally, East Cactus argues that its status as a bona fide purchaser (BFP) of the property for "$5,507.17—an undeniably 'valuable' amount"—means that the deed of trust cannot be enforced against it.[53]  But, as the Nevada Supreme Court has held, when tender is made[54] or excused[55] before the foreclosure sale, the purchaser's "status as a BFP is irrelevant"[56] and the deed of trust is preserved.  Even if bona fide purchaser status could save East Cactus from having

---

[52] *See Bank of New York Mellon v. 4655 Gracemont Ave. Tr.*, No. 2:17-cv-63-JAD-PAL, 2019 WL 1598745, at *4 (D. Nev. Apr. 12, 2019), reconsideration denied, 2019 WL 6174309 (D. Nev. Nov. 20, 2019), and appeal dismissed, No. 19-16013, 2020 WL 6580178 (9th Cir. Aug. 19, 2020).  The Ninth Circuit has certified to the Nevada Supreme Court the question of whether any statute of limitation—and if so, which one—applies to such quiet-title claims.  *See U.S. Bank, N.A. v. Thunder Properties, Inc.*, 958 F.3d 794, 799 (9th Cir. 2020) (noting that Nevada may borrow the five-year limitation periods in NRS 11.070 and 11.080 or apply the four-year catch-all deadline in NRS 11.220).  The bank's quiet-title claim in this case is timely under either a four- or five-year statute.  East Cactus's suggestion that it is instead governed by the three-year statute in NRS 104.3118(7) for "an action for conversion of an instrument, for money had and received, or like action based on conversion, for breach of warranty, or to enforce an obligation, duty, or right arising under [NRS Chapter 104's negotiable instruments article]," ECF No. 78 at 15, ignores—or requires me to contort—the nature and purpose of the bank's claim, and I decline to do so.

[53] ECF No. 78 at 21–23.

[54] *See Bank of Am., N.A. v. SFR Investments Pool 1, LLC* ("*SFR II*"), 427 P.3d 113, 121 (Nev. 2018), as amended on denial of reh'g (Nov. 13, 2018) (noting that "[a] party's status as a BFP is irrelevant when a defect in the foreclosure proceeding," such as pre-sale tender of the superpriority portion, "renders the sale void" as to that portion).

[55] *Perla Del Mar*, 458 P.3d at 351 (holding that actual tender is excused, and bank's interest is preserved, if it is apparent that tender would have been rejected).

[56] *SFR II*, 427 P.3d at 121.

this security interest stick to this property, this purchaser has not established that it can claim such status here. Though East Cactus argues that "nothing in the record indicates that [it] had any notice" of a competing interest,[57] the property records certainly contained notice of this deed of trust,[58] and when East Cactus bought this property from Antigua in March 2013 for a fraction of the original loan value, the legal effect of an HOA's foreclosure sale on a lender's first trust deed was unsettled.[59] So East Cactus has not shown that it purchased this property "with[out even] . . . reasonable cause to know that there exist[ed] a defect in, or adverse rights, title or interest to, the real property,"[60] as it must to claim BFP status.

## Conclusion

IT IS THEREFORE ORDERED that:

- The bank's renewed motion for partial summary judgment **[ECF No. 76] is GRANTED in part. Summary judgment is granted in favor of the bank and against all defendants on the bank's quiet-title claim (first claim for relief) based on an excused-tender theory; the motion is denied in all other respects.**

- All **remaining claims are dismissed as moot**.

- Antigua's and East Cactus's motions for summary judgment **[ECF Nos. 77, 78] are DENIED.**

---

[57] ECF No. 83 at 6.

[58] ECF No. 76-1.

[59] *Freedom Mortg. Corp. v. Las Vegas Dev. Grp.*, LLC, 106 F. Supp. 3d 1174, 1176 (D. Nev. 2015) (recounting that, "[i]n the years following Las Vegas's real estate crash, lenders and investors were at loggerheads over the legal effect of a homeowners association's (HOA's) nonjudicial foreclosure of a superpriority lien on a lender's first trust deed," and the Nevada Supreme Court didn't provide any clarity until *SFR I* was decided in September 2014).

[60] *See* ECF No. 83 at 6 (quoting NRS 11.180's definition of BFP).

- The Clerk of Court is directed to **ENTER JUDGMENT** in favor of the Bank of New York Mellon fka the Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2006-OC3, Mortgage Pass-through Certificates Series 2006-OC3, **DECLARING that** the 2013 foreclosure sale of the property known as 1050 East Cactus Avenue #2112, Las Vegas, Nevada, 89123 did not extinguish the deed of trust recorded on 2/16/2006 as instrument 20060216-0000694 in the Clark County Recorder's Office, and **CLOSE THIS CASE**.

Dated: February 19, 2021

_____
U.S. District Judge Jennifer A. Dorsey